**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 15-20609

ROGER MAX AUSTIN,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Roger Max Austin was tried by jury and convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1); using and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c); and conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances, 21 U.S.C. §§ 841(b)(1)(A) and 841(a)(1). Defendant was sentenced on August 21, 2018 to 255 months imprisonment. (ECF No. 479, PageID.3899.) He appealed to the Sixth Circuit, which affirmed Defendant's conviction and sentence in December 2019. (ECF No. 631.)

Acting over the signature of one "Vicky Grabitz, POA" (Power of Attorney), Defendant filed an "Emergency Motion for Compassionate Release" under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 652.) He argues his health profile leaves him vulnerable to an infection from the Coronavirus Disease ("COVID-19") and seeks immediate release on home confinement. The government has filed a response. (ECF No. 655.) Upon review of the materials, the court will deny Defendant's motion.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one

2

of the four categories in § 1B.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B.13; *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements).

The court notes that Defendant has failed to exhaust his administrative remedies. There are two procedures by which the court may hear motions for compassionate release. First, the BOP can move for compassionate release. 18 U.S.C. § 3582(c)(1)(A). That procedure is not applicable here. The BOP did not move for or endorse Defendant's compassionate release.

Second, after the passage of the First Step Act in 2018, Defendant can file a motion on his own. 18 U.S.C. § 3582(c)(1)(A). However, he may do so only "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [Defendant's] facility, whichever is earlier." *Id.*

Here, Defendant asserts that he submitted a request for compassionate release internally at the BOP "[o]n March 3, 2020." (ECF No. 652, PageID.5479.) The request was allegedly denied on April 10, 2020 and Defendant has not yet exhausted his administrative appeals. (*Id.*) That forecloses Defendant's ability to bring his own motion for compassionate release after he "fully exhausted all administrative rights." 18 U.S.C. § 3582(c)(1)(A). Nonetheless, Defendant may also bring a motion for compassionate release after "the lapse of 30 days from the receipt of . . . a request [for compassionate release] by the warden of [Defendant's] facility." *Id.* Defendant filed the instant motion on April 14, 2020, forty-two days after Defendant allegedly first sent his request for

release to the BOP. Defendant attached a purported denial letter from the BOP. (ECF No. 652, PageID.5482.) That document states that Defendant's request for compassionate release was "received" by the BOP "on March 26, 2020," only nineteen days before Defendant filed his motion for compassionate release. (*Id.*) The thirty-day waiting period in § 3582(c)(1)(A) begins after "the *receipt* of . . . a request" for compassionate release, not when a request is allegedly first sent. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *Receipt*, Webster's Third New International Dictionary, Unabridged (2020) ("[T]he act or process of receiving.").

Defendant's claim is not ripe. The plain text of 18 U.S.C. § 3582(c)(1)(A) states that Defendant must either exhaust all administrative appeals or wait thirty days; Defendant has done neither. *Grand Trunk W. R.R. Co. v. U.S. Dep't of Labor*, 875 F.3d 821, 824 (6th Cir. 2017) (quoting *King v. Burwell*, 135 S.Ct. 2480, 2489 (2015)) ("If the statutory language is plain, we must enforce it according to its terms."); *United States v. Alam*, Case No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)) (denying a motion for compassionate release based upon the outbreak of COVID-19 for failure to exhaust).

Defendant's motion fails for lack of exhaustion. *Ross*, 136 S.Ct. at 1857 ("[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes."); *Hoogerheide v. I.R.S.*, 637 F.3d 634, 639 (6th Cir. 2011) (Courts lack discretion to waive "a congressionally established exhaustion imperative, not a judicially created one."). Nonetheless, some district courts have waived § 3582(c)(1)(A)'s exhaustion requirement due to the outbreak of COVID-19. *E.g. United States v. Al-Jumail*, Case No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020) (Hood, C.J.). Even if it

were possible for the court to waive exhaustion, Defendant's motion would fail on the merits.

Defendant asserts that he suffers from heart disease and Crohn's disease. He further claims that he suffered a serious heart attack in 2018. Medical records support Defendant's account. (*E.g.*, ECF No. 656, PageID.5530.) Despite this, Defendant's circumstances do not warrant compassionate release considering the sentencing factors under 18 U.S.C. § 3553(a).

Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

5

Here, Defendant was sentenced to 255 months imprisonment fewer than two years ago. The factual predicates for Defendant's sentence have not changed since then, with the exception of the referenced ailments.

Before Defendant's arrest in this case, he had been convicted of four felony offenses and seven misdemeanor convictions.

Defendant engaged in highly organized narcotics distribution. He was and is a member of an outlaw motorcycle gang, Devil's Diciples [sic], which was deeply and profitably involved with manufacturing, using, and distributing methamphetamine ("meth"), among a myriad of other racketeering crimes and miscellaneous anti-social behavior, including obstruction of justice, subornation of perjury, and murder.

Defendant was assisting the manufacture and distribution of meth out of a Devil's Diciples' drug house in Warren, Michigan. (ECF No. 631, PageID.530-32.) Law enforcement officers observed Defendant purchasing the chemical components of meth and taking them back to the Warren house. (*Id.*) The police eventually stopped Defendant and found on his person meth, packaged for sale, as well as a loaded firearm. (*Id.*) After Defendant was arrested, another gang member immediately went to the Warren location to warn other members. (ECF No. 520, PageID.4437-38.) A search warrant was then executed on the house, yielding seizures of meth and its chemical precursors, tools and apparatuses used to produce meth, drug paraphernalia, and two shotguns. (ECF No. 631, PageID.530-32; ECF No. 520, PageID.4439-42.) Defendant's trafficking operations took place within a wider scheme across southeast Michigan that, in a conservative estimate, consumed over 300 grams of a base chemical,

pseudoephedrine, used in meth production.[1] (ECF No. 475, PageID.3876.) Other estimates put the total amount of pseudoephedrine used at over 1,000 grams. (ECF No. 520, PageID.4464.)

Defendant was arrested and indicted for felon in possession of a firearm in September 2015. (ECF No. 9.) In November 2016, the court entered a stipulated order providing Defendant with discovery of sealed documents. (ECF No. 123.) The court specifically ordered Defendant to "not disclose, make copies of, or reveal the contents of such documents to any other person." (*Id.*, PageID.467.) The government later discovered that the identity of a Devil's Diciples gang member who was cooperating with investigators had been leaked to other gang members outside of jail, and subsequently passed on to other outlaw motorcycle groups. (ECF No. 475, PageID.3876-85.) Documentation with information on the cooperating gang member was given only to Defendant. (*Id.*) Recordings of Defendant's phone calls from jail included discussions with Defendant's wife concerning the cooperating member, and their plans for document transfers. (*Id.*) The government has provided substantial evidence that Defendant was at least one source of the leak revealing the cooperating gang member's identity. (*Id.*) The court noted at Defendant's sentencing hearing that his actions were a "solid step in the direction of witness intimidation or retaliation." (ECF No. 522, PageID.4580.)

---

[1] By comparison, a regular dosage of Sudafed: Sinus Congestion contains 30 milligrams of pseudoephedrine. Sudafed, *SUDAFED® Sinus Congestion* (last visited May 11, 2020), https://www.sudafed.com/products/sudafed-sinus-congestion?upcean=300810865241#directions.

Based on "the nature and circumstances of the offense and the history and characteristics of [Defendant]," it is this court's opinion that Defendant's release is not justified. 18 U.S.C. § 3553(a)(1). Defendant has served fewer than two years out of a twenty-one-year sentence. He was engaged in dangerous organized criminal activity, planning and organizing the production and distribution of a deadly narcotic, methamphetamine. He carried a loaded weapon with him, to serve, along with his fellow members of the Devil's Diciples, as protection for the Warren drug house, the meth he was possessing for sale, and, likely, cash proceeds from drug sales. After arrest, Defendant obstructed justice, abused the discovery process, and disobeyed an explicit court order by releasing confidential information on a cooperating gang member to other gang members. The motorcycle gangs to whom Defendant provided information had the ability and motive to commit serious acts of violence against the cooperating member, potentially risking that member's life.

Defendant's actions were concerted and dangerous, and serve only as the most recent chapters in Defendant's long history of criminal conduct. Defendant has developed extensive connections within a dangerous criminal network over the course of many years. On these facts, a sentence of, effectively, two years of imprisonment would be patently inadequate.

In order to "reflect the seriousness of the offense[s], to promote respect for the law, and to provide just punishment for the offense[s]," Defendant cannot be released after two years imprisonment. 18 U.S.C. § 3553(a)(2)(A). Defendant's original sentence "afford[ed] adequate deterrence" against his wide-ranging criminal conduct and "protect[ed] the public from further crimes," which is a real and substantial possibility

given Defendant's deep ties with the Devil's Diciples and other motorcycle gangs. 18 U.S.C. §§ 3553(a)(2)(B), (C).

The court sentenced Defendant to 195 months imprisonment for conspiring to manufacture, distribute, and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. That charge had a sentencing guideline range of 168 to 210 months and Defendant's sentence fell within it. Defendant received an additional sixty months as part of a mandatory consecutive sentence for carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). The Sixth Circuit affirmed the court's guideline calculations and Defendant's sentence. (ECF No. 631.) The "sentencing range established" supports the court's original sentence and counsels against releasing Defendant into society after only two years imprisonment. 18 U.S.C. § 3553(a)(4).

Defendant does not contest or present evidence regarding any factor listed under § 3553(a). Instead, Defendant argues solely that the threat of COVID-19 should impel the court to order his release. The court recognizes Defendant's health conditions, including heart disease and Crohn's disease, and understands the possibility that Defendant may suffer additional medical complications if he were to contract COVID-19. Nonetheless, the location of Defendant's detention, FCI Allenwood in Allenwood, Pennsylvania, has instituted extensive precautions to mitigate the spread of COVID-19. All inmates have been secured in their cells; newly arriving inmates are screened for symptoms and risk factors; inmates with risk of exposure or with symptoms are quarantined and are medically examined; all those testing positive for COVID-19 are

given medical treatment. There are currently no confirmed cases of COVID-19 in FCI Allenwood. (ECF No. 655, PageID.5518.)

To allow Defendant's release, the court would be left to guess whether COVID-19 will enter FCI Allenwood, and if it did, whether the disease will spread despite significant efforts to contain it, and further whether Defendant will contract the disease, and finally whether Defendant will develop serious complications. The court would additionally need to project whether Defendant's risk of contraction would be greater or lesser if he were released into society, where there may be tens of thousands of confirmed COVID-19 cases, depending on the locale. State of Michigan, *Coronavirus: Michigan Data* (last visited May 11, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (detailing reported COVID-19 cases across Defendant's home state of Michigan). Furthermore, considering Defendant's "needed. . . medical care" for his current conditions and the medical care he may need in the future if he were to contract COVID-19, Defendant's detention at FCI Allenwood could serve as a superior alternative to release. 18 U.S.C. § 3553(a)(2)(D). At FCI Allenwood, Defendant is detained in a controlled environment, is constantly monitored, and is provided medical care. The court is given no assurances as to what, if any, medical care Defendant would receive upon release.

Although COVID-19 presents a threat to Defendant's health, especially in view of his preexisting conditions, the disease does not justify Defendant's release. FCI Allenwood has taken proactive steps to prevent the spread of COVID-19. Defendant continues to be monitored and receive medical care. At the same time, Defendant has a history of committing sophisticated and dangerous crimes. In fact, Defendant has

participated in criminal conduct for almost his entire adult life. If released, he could return to his prior life as a motorcycle gang member in spite of his physical condition, and continue a well-developed set of criminal habits and lifestyle.

Based upon the record presented, Defendant remains a threat to public safety and will therefore serve his term of imprisonment as originally ordered in August 2018. Considering all pertinent sentencing factors under § 3553(a), as discussed above, Defendant's request for compassionate release will be denied. Accordingly,

IT IS ORDERED that Defendant's "Emergency Motion for Compassionate Release" (ECF No. 652) is DENIED.

                                             s/Robert H. Cleland                  /
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated: May 15, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 15, 2020, by electronic and/or ordinary mail.

                                             s/Lisa Wagner                      /
                                             Case Manager and Deputy Clerk
                                             (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\15-20609.AUSTIN.EmergencyMotionforCompassionateRelease.RMK.RHC.2.docx